Case number 23-3623, Norton Outdoor Advertising Inc v. Village of St Bernard OH at all. All arguments to be 15 minutes per side. Mr. Michael A. Galasso for the appellant. Good morning, your honors. Michael Galasso on behalf of Appellant Norton Outdoor Advertising Inc. I've reserved five minutes for rebuttal.  Your honor, I think before I delve into the structure of my argument, I wanted to just go over a definitional concept here, and that is that when I refer to billboards or off-premise speech, I'm talking about the same things. I'm going to try to use the language of the ordinance that's in play, but they're really two terms for the same thing. And the speech that's communicated through these billboards, although it's a paid medium, represents more than just commercial speech. It is the political speech of political candidates or other messaging that doesn't propose a commercial transaction. So just because it's in the context of a business doesn't take it out of the free speech protections. What we don't dispute in this case is that signs are protected by the First Amendment. That's not in dispute. We also don't dispute that the Austin decision that came out from the Supreme Court two years ago holds that the on-premise, off-premise distinction in and of itself is not subject to strict scrutiny because it's not content-based. The Supreme Court said that the reference to the content on the sign was minimal such that you're just looking at the sign to determine whether it's connected to the location on the premises. And so for that reason it gets intermediate scrutiny instead of strict scrutiny. That's not up for debate either. The last thing that's not up for debate is that traffic safety and aesthetics are significant governmental interests. And that dates back to even the Metromedia case from 1981. Now here's where we do differ. Where we differ is what level of constitutional scrutiny the district court is supposed to employ in order to analyze the ordinance that's in play in this case. What is the ordinance that you have standing to object to? Is it simply the 7-11 statute? Yes, Your Honor. It is the 7-11 and the 11-85 because both of those combined together are what the village used to take the governmental action in this case. So it's an as-applied challenge to essentially the cancellation of the sign permit in this particular case. I thought that both the magistrate judge and the district judge said that you had not shown standing in the case of the magistrate judge and then that it wasn't objected to when you were making your objections in the district court. So I thought that the issue was simply the 7-11, which is the expressway advertising provision. Well, Your Honor, with respect to the standing issue, we did not object based on the facial standing challenge that we had made in the complaint. We limited it to an as-applied as we went up because we felt like it was more narrow grounds. But essentially this relates back to a case that I think was a judge-to-lot case. It was called Pierce Township in which the court said that we're not going to analyze other provisions of a sign ordinance where you don't meet a specific content-neutral one in the first place because you don't have standing. But what we're arguing here is not that we need to suffer a discrete injury under each of those exceptions. What we're saying is that those exceptions bring about a higher level of scrutiny. They either bring in strict scrutiny and make it content-based or they require St. Bernard under intermediate scrutiny to go beyond and finish up the central Hudson test and finish beyond just stating the governmental interest. So just as in Reed where they had all the exceptions, it would be impossible for a party to have a concrete and distinct injury under every exception. What we're saying is that those exceptions render the ordinance content-based. And so for that reason, if you just stop and the parties are in agreement that traffic safety and aesthetics are governmental interests, you can't stop there. Because if you do, it's either the equivalent of rational basis review or it's less than rational basis review. Because at that point, you don't even go beyond determining whether there's a rational basis for the law. You just accept the stated governmental interest on its own. And so we believe that the case law that came out of Austin and the case law that preceded Austin requires that the government bear the burden of proof on all parts. And if you just stop at saying traffic safety and aesthetics, you've essentially shifted the burden to the challenging party to perform the government's test that they have to do. So with that, what I'd like to do is move on to just the Austin case itself because I don't think it changed a great deal. Basically, there was a Fifth Circuit decision in Austin. There was a Sixth Circuit decision. Thomas v. Bright, it may have changed actually at some point. And what that held was that it was content-based because you had to read the sign to determine whether to apply the regulation. Can you focus us on exactly what part of what statute you think is unconstitutional? So, Your Honor, there are exceptions in 711.02 for business signs, directional signs, for sale signs, and public service signs. And so, for example, a public service sign, if the village of St. Bernard says you should get your COVID shot, that's going to be exempt from licensing and regulation. If, on the other hand, a private party did that or a billboard company did that, then that would require a permit and would be subject to the exceptions. Do you read public service as being only by the government as opposed to privates? Because the time and weather usually are not by the government. And presumably there could be other public service, you know, buckle up, call your mother, things of that sort. That's an interesting question, Judge, because the Flying J case out of the Kentucky Supreme Court basically invalidated digital restrictions on off-premise signs for the same reason. That you can't say that a sign is more or less dangerous because it has the time or temperature versus the price of gas. And so that's why those were invalidated. But the public service exception that you're asking about, I think that it covers not the identity of the speaker, but it covers what the message is conveyed. And if you look at the 30B6 representative for the village, what he testified to is that he would have to understand the intent of the person that was communicating the message in order to know whether it needed a license. You're objecting to the public service exemption. Are you also, at this point, objecting to the penance, flags, religious, et cetera, or is that part of the 1185 argument? Your Honor, that is part of the 1185. But those two parts of the ordinance come together and they both apply, and they were both actually, if you look at the letter that was given to us as a, quote, notice of violation, it comes with 1185. Okay, let me ask you then about either of the two. If you look at our international outdoor case, the first one in 2020, it had an exception. It wasn't word for word the same, but had a variety of things of holiday and other seasonal signs and so on and so on, and in that case we said, you know, just go back and make a strict scrutiny analysis. And we were pretty clear, I thought, in international outdoor. So is that what we should do here, or how is it different from international outdoor in that respect? Yes, Your Honor. So what we're urging is that the district court employ the full level of constitutional scrutiny. So the only evidence that got put forth at the trial court on summary judgment on behalf of the village was the preamble. That was it. There was no other evidence. If you look at the Austin case, there was actually a trial at the district court in the Southern District of Texas where the court took evidence, made a ruling, actually applied intermediate scrutiny, was reversed at the Fifth Circuit, applied strict scrutiny. Then the Austin case came back down on remand and then they issued the decision. They would have never had to have a remand or a trial if you could just stop at the first part. And so what we're urging is that the court has to apply the full level of constitutional scrutiny. When you say the full level, let's suppose that, you know, we give you a win to some degree, at least we don't affirm, we remand, and then what do we say? Do we determine strict versus intermediate, or do we say try both, or do we affirmatively say apply strict scrutiny, but then you have to apply it? Well, that's an interesting question, Judge. What I would refer to, there's a decision from this court in Bell South out of Kentucky, and it says where a statute doesn't survive intermediate scrutiny, there's no need in applying strict scrutiny. So I think that the remand here has to be to apply the full test. You can't just stop at the statement of governmental interest. And that second part that sometimes gets combined, What you call the full test is both intermediate and strict, and then see how it comes out? And I should be more precise in my language, Judge Bonds. What we're saying is that this case is not like Austin. Because Austin, if you look at footnote 3 in the decision, it says that it has no, and I'll read it, there are no content discriminatory classifications for political messages, ideological messages, directional messages, specific events, religious non-profit organizations, only location-based. St. Bernard's ordinances are not location-based, so they get strict scrutiny. But even if they don't get strict scrutiny, and it has to be reviewed under intermediate scrutiny, it needs to be the full test. We didn't get strict scrutiny, we got intermediate scrutiny, and so we're asking on the remand that it be given the full level of strict scrutiny, or if intermediate scrutiny applies, the full intermediate scrutiny test. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court, Ray Fredegar for the Appalese, the village of St. Bernard Appalese. The district court correctly recognized that the Supreme Court case of Austin decided the central question here, and that is a regulation that distinguishes between on-premises and off-premises advertising is content neutral and is subject to only intermittent level scrutiny. But isn't there more than just on-premises versus off-premises in 711.02A4? Yeah. That's one of the things that they're arguing, Judge Moore, is that there are a few exceptions. But I will say this. This case is much more like the facts in Austin as in any other case, because if you look specifically at those exceptions, you'll really see that this is all about advertising. The exceptions are essentially making it clear that this is advertising-based. For instance, the very first exception is, well, if it applies to on-premises advertising. Well, that's exactly what makes this an on-premises, off-premises regulation. But my concern is four. Four. Public signs which disclose information, such as time or weather, provided they are not used to advertise or promote goods, products, services, or events. Why does that not distinguish this from the Austin case? Well, I think it's important that it says provided such signs are not used to advertise or promote goods, products, services, or events. And that's an important distinction in that provision. Well, but so hypothetically, you could have a sign saying get your COVID shot, but you couldn't have a sign saying get your COVID shot at the nearest CVS. Well, first of all, I would comment you can have a sign that says anything. The only difference is it can't be a variable changing sign. Right. So Norton can advertise, put anything it wants on its signs. Yeah, but they want to have these special super-duper signs that are the current rage. Right. So under this provision, they can have a sign saying get your COVID shot, but they cannot have a sign saying get your COVID shot at the nearest CVS when it's not on a CVS property. Well, that's a possibility. So isn't this then unconstitutional? I would say it's not constitutional, and it's certainly not constitutional as applied to Norton. Also, the sign definitions in 1185, I think Your Honor was correct in that Norton does not have any standing to argue anything under 1185. In 1185... I'm sorry if I... I guess I feel like I'm missing this. If they're challenging 711, which is what the district court said that was all that they were challenging, and if 711A4 is not just an on-premises, off-premises provision, but is actually looking at the content of the ad, and it's okay to have a COVID shot, good neighbor policy, but not okay to have a COVID shot at your nearest CVS. Isn't this impermissible content-based? I don't believe it is, and I think they can have it because it goes to primarily intended to advertise, and the primary message in that is get your COVID shot. The languages provided such signs are not used to advertise. It doesn't say primarily, does it? Yeah. Well, if you read the entire statute together, it essentially is signs primarily intended to promote the sale of goods, products, services, or events on the same premises. Are you reading... 71102A1. Yeah, but those are the exceptions. Yeah. Well, we believe the statute is constitutional. We believe the district court did apply the test. They just didn't ramble through and restate the intent as the preamble. They did apply the test. Norton itself says that traffic and aesthetics and safety are substantial government interest. It is also possible for severance. If this court feels that there is any portion of the statute that is questionable, it could sever that portion of the statute. Are there any other questions? Thank you. Thank you. May it please the court. The holding and read is constrained by footnote 3 where it says that the city, and this refers to Austin, the provisions here do not single out any topic or subject matter for deferential treatment. It's irrelevant. It's based only on location. And if you look at page 14 of what went on in the remand in Austin, it says Austin's code does not allow content discrimination. So those provisions in section 711 are very broad and they're undefined. And if you... Could your opponent suggest severance? Could we just say let's sever 711-02-A-4, which is the one on this public service thing, and then would the statute be constitutional? Your Honor, so the severance issue was not ruled on at the district court. I'm not even sure anyone raised that to bring up the severance test. If you remove content-based exceptions from the statute, could you then... Well, if that were the case, Your Honor, here's what I would say. If the court were to determine that by operation of severance, even though it wasn't raised below, that those portions should be disregarded, then it's still going to put us back to the situation where we've got intermediate scrutiny still needs to be completed versus strict scrutiny. So it would be a matter of degree, not difference. If this were a pure City of Austin case, in other words, if the ordinance were read to say on-premises, fancy-dancy signs are great. Off-premises, you cannot have them. Then you're saying we should apply intermediate scrutiny. Was that done by the district court here or not? Intermediate scrutiny. Well, the district court purported to apply intermediate scrutiny, but did so by saying that the state of governmental interest for traffic safety and aesthetics, and we're not going to make them go farther because it's just common sense and you don't need empirical data. I'm not urging empirical data. I'm urging the completion of the second part of the central Hudson test where the fit and relevance comes in, and those provisions of the Anbach decision from this court and Pagan v. Frookey that say that you just don't rely on the government's interests alone. I'll give a hypothetical, Judge. The City of Cincinnati does not differentiate between digital signs, whether they're on-premise or off-premise, but the City does ban off-premise signs downtown in the Central Business District. So now the City has contracted with the third party to place digital off-premise signs downtown Cincinnati. That's what they've chosen to do. If now later the City comes in and they say, you know what, we're going to ban off-premise digital signs a la Austin, they would be immune from any constitutional scrutiny as to why it's okay for them to have a digital sign in the Central Business District that's off-premise, but if a private party engages in the exact same conduct, it's aesthetically displeasing or it's dangerous. We couldn't get there because you can't get past saying the words traffic safety and aesthetics. So that's what we're arguing. Austin is a unique situation in that they specifically made their ordinance apply evenly. They actually went on and said that all of the off-premise signs are basically grandfathered. They're non-conforming, so you can't have any new ones. So changing them is what is being forbidden. That's not the case in St. Bernard. They're not all non-conforming. Now they're under a cap-and-replace ordinance where the number of signs is not supposed to increase, but you can still have new signs. So the St. Bernard situation is just different qualitatively in two big respects, and if we don't notice that and apply the full scrutiny, then what we're doing is that we're really relegating this level of speech to rational basis. Aside from some of the fighting words type things, there aren't any rational basis cases on First Amendment free speech. So for that reason, we're urging the Court to either remand it for the employment of strict scrutiny or, at the very least, full intermediate scrutiny. Thank you. Thank you. Thank you both for your argument. The case will be submitted.